Good morning, Your Honors. May it please the Court, I'm William Abrams of Bingham McCutcheon for the California Alliance of Child and Family Services and with me is my colleague Jennifer Lopez. This case involves the Child Welfare Act of 1980 and there are three points, three issues for this Court to consider. The Child Welfare Act requires that under a deal between the State and the Federal Government that the State pay Federal, excuse me, foster care maintenance payments and that it cover the cost of certain items. It's not ambiguous about this, such as shelter, education, care for the children and the like. And this covers 9,500 children in the State of California. Mr. Lopez, I didn't quite understand one thing. I understand it is a combined State-Federal program. The State is supposed to get a certain percentage of the expenses that are enumerated in the statute, is that correct? That's correct. So the way it works is the State makes a deal with the Federal Government. What's the percentage? Let me stop you. What's the percentage? Fifty percent. The Federal Government contributes 50 percent of the cost, the State contributes approximately 30 percent, and the counties contribute 20 percent. So that's the breakdown. And which statute is that in? That's actually in the regulations that implement it. So the statute itself says that there will be the contribution that's worked out through the enabling regulations. I don't have the cite on that, Your Honor. But you don't have the – you say you don't have the regulation. I don't have the regulation to cite to Your Honor right now. But that's the – that's how it breaks down. So the State is required to make these foster care maintenance payments. It says that they shall make foster care maintenance payments. And the foster care maintenance payments are defined in Section 675.4a as to cover the costs of various enumerated items, such as shelter, insurance, care, education, and the like. It doesn't say that it shall cover some costs. Where in the – either the statutes or the regulations is there a COLA, or cost of living adjustment requirement? There is not a COLA. It says – the federal statute says that it shall cover the costs. And it's up to the states to work out how it's going to do it. It doesn't command a particular system. And so the obligation of the states is to have a system that covers those costs. Now, it might be through a COLA. And, in fact, the original deal that was worked out was to peg it to a kind of a COLA called the California Necessities Index, which is a COLA for low-income people. But that's not mandated. It can be any kind of a system. It could – So you're saying that covering the costs automatically includes a COLA, or automatically includes increases? Under the – under the state statute and the enabling regulations, the state came up with a scheme called the RCL, the rate classification level system. And I hasten to add that it is not the RCL that is being challenged here as a structure. It is the implementation of the RCL. So the RCL structure provides for 14 different rate classifications. And these classifications are pegged to different kinds of institutions based upon paid awake hours, for example, the number of staff, the training and background of the staff, and whether mental health services are provided. And it is intended to come up with a system that will cover these costs. So that's just the way the state of California structured it. We have no quarrel with that as a structure. And, in fact, the state statute provides that there is to be an annual review to determine if the actual – if the costs are being covered. And it's pegged to the CNI. Where is that? That is in the state statutes, and that is in Welfare and Institutions Code 11453 and 11462G2. Sorry, 114 – the last one was what? 11462G2. We're here not to challenge the structure of the RCL. We are here because the implementation of the RCL violates the CWA. And it violates it because it has not – it is not covering the costs mandated by Section 675-4A. Just to clarify one other thing, when you say it's not covering the costs, there's a bit of confusion about whether those costs are meant to be actual costs, because your question was asked a number of times. Yes, Your Honor. I'm not sure whether it's meant to be costs in accordance with the CR – the RCL scheme, which includes the CNI adjustment for inflation. The CNI adjustment has not been made consistently, and so over – But just – I mean, it would be helpful just to answer my question. Yes. Are you seeking actual, real, out-of-pocket costs, or are you saying that the RCL, without the CNI adjustment, does not cover costs? The latter, Your Honor. It doesn't cover costs. You're not trying to say you should get all of your actual out-of-pocket costs. Under the RCL, we're not challenging that part. So a State, for example, could come up with a system where it says everybody turn in their receipts, and that's how we're going to pay you. California doesn't do it, and we don't quarrel with that as long as it has a rational, reasonable way of covering the costs. If the CNI was kept up to date and those were made, then we'd be fine. We wouldn't be here. But there's a 32 percent gap at this point, and that only goes to 2006, 2007. Well, let me just ask. You said that you were referencing this adjustment under two statutes, 11-4-5-3, which is just the basis upon which the calculation is done. But the actual statute itself under 11-4-6-2-G2 indicates that while, in fact, there is an adjustment that is supposed to be done based on the CNI, it's the adjustments are funding is subject, quote, subject to availability of funds, end of quote. So I don't quite understand what you're saying there. That's one of the three points. So in other words, you are, in fact, quarreling with the way the system is set up. We quarrel.  Well, is that an issue? That is an issue. It's one of the three points that's from the order below. Let me ask my question. Yes. Is that really at issue in this case, given the State's concession in its brief, that it's not invoking or relying on availability or lack of availability of funds as an excuse? I'm not sure I took that from their brief. I think that they're all right. I certainly will ask counsel whether, well, I'm taking it as exactly what it says. It says the State's not relying on the lack of availability of funds as an excuse. If that is the State's position, we're glad to hear it. It's one of the three reasons that the district court gave. I understand. So if we're past that. The district court did lots of things. All right. So I'm trying to get it down to what we have to actually decide in order to decide this case. And if we were going to decide it in your favor, I'm asking you whether you think it's necessary to deal with that parenthetical in 11462G2. If the State is giving in on that one, then the court doesn't have to do it. For this case. All right. And we say that there should not be this subject to availability of State funds. If that's ‑‑ I think it's ‑‑ we have to deal with it because the district court did mention it. But if the State is not contesting it. The district court's opinion is not published, right? It's not a published opinion. Okay. So if that's off the table and conceded by the State, then that's one of the three things we don't need to deal with. Because the Child Welfare Act does not have that savings clause. It just says the State shall cover. And now, the second issue here ‑‑ Does the Secretary have any obligation to make sure that the payments are up to snuff, so to speak? Yes. Because to comply with the statute, Your Honor, the State has to come up with a scheme that covers the costs. Didn't the Secretary approve the plan as prepared by the State, which includes all of this? The Secretary approved the structure. The Secretary does not audit what the State is paying. The Secretary looks at the plan and, as Judge Alsop said in the companion case for foster families, it's a review to see if the structure is in place. But there's nothing in the structure that requires a cost of living increases insofar as costs are concerned. So I don't understand. Our structure does have it. The 2001 amendment says that there will be a review annually and we'll look at the CNI. And the State ‑‑ Subject to availability. And the State has said, one, you know, we are ‑‑ it's subject to the availability. And if that's off the table and they concede, that's fine. But there is no exclusion for subject of availability. This is the contract made between the Federal Government and the State. It's just like my mortgage payment, my taxes. It's not subject to my availability. I have to pay it. The State wants the Federal money. The State has to pay it. The court below also carved out an exception for substantial compliance. Now, substantial compliance is not to be read into the statute. It's not read into other statutes. There's no authority for it. The authority comes from a footnote in a Missouri District Court opinion, a Martin case, in which it said ‑‑ referred to substantial compliance in footnote 7 without any reference to any citation. Substantial compliance is not allowed. It's to cover the cost. Just like ‑‑ Well, in fact, the ‑‑ as I recall, the court found that rather than 80 percent of the cost, which is sort of the bureaucratic convenient figure that was used, it's about between 60 and 71 percent. Now, this is a gradual failure to keep up with expenses, and apparently it's a statewide standard. Prices in Wal‑Mart in Red Bluff would be different from Ralph's in Beverly Hills or something, but the bureaucracy can't cope with that, so they just pick a number and say this is what we're going to use. Why isn't the remedy to go to the Federal Department of Health and Human Services and say California is slipping behind at 2 percent a year, and now after 20 years they're nearly 40 percent behind, the true cost of caring for these people in these institutions or private homes, wherever they are. Why isn't the remedy to go to the Federal agency that's the partner here in negotiating these agreements and lobby those people? Why come to a Federal judge who knows nothing about this sort of thing and say you've got to make them behave properly? Your Honor, it may be a remedy. I don't know that there's an administrative provision for it, but we also do have the remedy, and there's no challenge to our standing. That was decided and was not brought up on appeal. Well, I think we probably will have to say you have standing, yes. And this is a remedy available. I mean, these — the 9,500 children who are involved in this case are there because the State's taking custody of them. There's really nobody to speak for them except for organizations like ours who are there advocating because we're here advocating. And that's one of the problems here. The State has not challenged the reasonableness of the costs. There's no suggestion that they're excessive, that they're improper, but there's this difference of at least 32 percent. That only goes to 2006-2007, and now we're in the 2009-2010 fiscal year. It's even more pronounced. If I may reserve the remainder of my time. Thank you, Your Honors. Good morning, Your Honors, and may it please the Court. George Prince for the Secretary of the State Department of Social Services and his Deputy Director. In anticipation of the Court's question that Judge Rimer suggested a moment ago, I want to try to put this in context. The decision by the district court was correct. The district court did not carve out an exception for lack of funds. In fact, the district court made a big point of saying at the end of her decision that should the numbers reach 80 percent or fall beneath that, there may be some question. But in the facts before her, there wasn't a question at that time. The issue of whether there's a lack of funds exception really isn't a real issue here, because the Court may have found that and may have made a reference to that in its decision. But the real issue here is whether or not the State of California is in step with what it is required to do. I just didn't hear you. I'm sorry. The real issue is whether what? Oh, whether the State of California is in step in compliance with the Child Welfare Act. And there's no real question that it is and that Judge Patel so found. The paragraph on costs that ---- Well, if I am obliged by my bank to have sufficient funds to cover a check, can I cover or have funds in there for 80 percent of the check? Well, as a matter of fact, Your Honor, I think that happens often, and there isn't an argument. Well, it may happen often, but if I don't want to be on the short end of an insufficiency of funds situation and I am obliged to cover my check, can I just pick a percent? I mean, if the obligation is cover the check, it doesn't say cover part of the check. It doesn't say cover some of the check. It doesn't say cover most of the check. Or it doesn't say just be in good faith and kind of come close. It says cover the amount for which you wrote the check. So what's the difference here? The obligation is to cover the cost. Well, there is not so much a difference here. You have to see it in the bigger picture. As in the analogy you set forth, the arrangement between you and your bank actually anticipates that sometimes there may not be funds in there to cover the check. And then the bank has an arrangement with you by contract that maybe it will set a structure for future payments or it will punish you by shutting down your account or it may even sue you. But that's between you and your bank. Your bank doesn't make the decision for you of, well, should I buy that diamond ring or should I buy, you know, something. Well, here the deal was we're going to pick a base year and we're going to actually come as close as humanly possible to approximating real costs. And then once we've done that base year calculation, we're going to keep it current by applying a cost of living index that's appropriate for this kind of institutional context. That's the deal between the State, in effect, and the Federal Government, and those people who are applying for benefits under the program, isn't it? It's the arrangement between the State and the Federal Government. As Judge Wu pointed out, the same sentence that ties California's increases to the CNI also says subject to the availability of funds. But you have said explicitly that you are not using lack of funds as an excuse to avoid complying with the Act. No, and we're not using that as an excuse. We're saying that the Act, the issue here is the arrangement between the Federal Government and the State of California. There is the State each year updates on a periodic basis a State plan that I think now approaches 178 pages. I mean, it's as complicated as the mosaics, as the tiles in the mosaics here. That is the arrangement between the State and the Federal Government, and it's very complicated. The Federal Government works with the State Government, Department of Social Services, to tweak, so to speak, the system year by year. And I want to just take an aside here. The whole issue of substantial conformity here is, it's not stated in Judge Patel's decision, but there is, in fact, a substantial conformity standard that covers Title IV-E of the. Well, I don't have any doubt about that. I mean, there's no, you're not covering actual, real, out-of-pocket costs, and nobody is pretending that you are. And that's really kind of substantial compliance. If my proffered take on what covered costs means is correct, taking a base year and then adjusting for inflation is kind of a proxy. It's a rough-shot approximation of what current costs are. That's substantial compliance. I mean, it's substantially covering costs, right? Why would 60 percent or 40 percent or 20 percent be substantially compliant? It's standardless and it's a sliding scale without meaning. Well, it's not without meaning, because as Judge Patel pointed out, at this stage in the case, the 80 percent figure was, in her view, substantially compliant. I know, but that's her view. What if in my view it's not? If you owe me the money, it's certainly not. If you owe Judge Goodwin the money, hey, I don't care. Whatever. Roberts. Well, I think, again, the question is whether the act is violated. And when the Federal Government has the remedy, such as in the analogy you made with the bank, the bank can deal with you in section 42 U.S. Code section 1320a-2a, if I have that right. There is an entire set of procedures prefaced and peppered with the word substantial conformity that gives the Federal Government a series of remedies to use against a State if it is out of whack with what it's supposed to be doing under those various provisions. Where does the State get the authority to put in the words in the State statute subject to budgetary considerations? The State has its own legislative process, and it can enact whatever statutes it wants. Again, the CNI was the system that the State built into its RCL system and into the statute to say in years when we can afford increases, we will provide those. And as the Court pointed out below, there were substantial increases given over the years. There are certain years when those increases were not. Hence, the end of the sentence says, subject to the availability of funds. That's a kind of an escape hatch, isn't it, that subject to budgetary considerations makes it almost impossible for a court to say that something is arbitrary and capricious, because the — and that's what Judge Patel found. It was not arbitrary and capricious because, I think partly because the statute permits the State to act subject to budgetary considerations. And on the record before her, she saw the details of how the State enacted that system, in fact, in concert with some of the stakeholders who are here today on the other side of the court. But isn't the answer to that question really that it is a Federal State program and the Federal component is approved pursuant to the regulation — I'm sorry, the review by the Secretary? The Secretary reviewed this particular enactment and approved it as part of the plan. So in essence, it's not contrary, at least in the Secretary's view, of the system. Is that correct? Precisely. And for years and years, the Secretary has approved it without ever stating to the State of California there's something wrong with the system. But why didn't either party bring the Secretary into this case for the Secretary's review at this point in time, on this point? Why didn't either party bring the Secretary in at this point, in this litigation, to answer this particular point? The Secretary of the Federal Department of Health? Yes. That's a good question. We are not the ones who brought the suit, Your Honor. All right. It's my understanding that often the Federal Government tends to jump out of these If I may use a bit more of my time, I didn't — I have not heard anything new from Mr. Abrams yet from what he has — what they've set forth in their brief. So there are just a couple of points I want to make in response to their reply brief. Number one, I have actually found a couple of cases that talk about the actual cost issue. They are not new cases, but they're both of interest because they involve the aid to families with dependent children statutes, which is part of the same Social Security umbrella. One is called Everett v. Schramm. It's a Third Circuit case from 1985, reported at 772 F. 2nd. 1114. And it talks about how a state can use a system such as the one California has to actually reduce its payments in given circumstances. This is another case. It's a California State case, but it also involves AFDC, and it cites Everett v. Schramm. It's California Homeless and Housing Coalition v. Anderson, reported at 31 Cal. App. 4, 450. It's out of the First District Court of Appeal in 1995, authored by Judge Chin, who is now in the State Supreme Court. Sotomayor, would you just provide a gumsheet with those cites on it, please, to the   Verrilli,, Yes, of course, Your Honor. And I also want to distinguish three of the cases that Mr. Abrams drops in a footnote in his reply brief, where they were talking about the issue of no or their view that the Child Welfare Act required strict conformity. As I pointed out, there is that statute, 42 U.S.C. 1320a-2a, that talks about substantial conformity and specifically refers to Title D of the Social Security Act, which is the Child Welfare Act. Excuse me, Title E, as in effort. The three cases they mentioned, Robertson v. Jackson, which is 766 F. Supp. 470, Haskins v. Stanton, a Seventh Circuit case, 1986, reported at 790 for F. Second 1273, and then a case called Southside Welfare Rights out of the Western District of Missouri in 1995, reported at 156 F.R.D. 187. All of those cases did involve food stamps. And in the Food Stamp Act, there is a strict compliance requirement. Again, that is not the case with the Child Welfare Act. Again, that statute 1320a provides several pages of remedies that the Federal Government can use working with the States, just as the bank might use with you, Judge Reimer, in working with you to overcome that overdraft that I assume is just a hypothetical. Thank you. And with that, if the Court has any questions, I'll be happy to address them otherwise. Just a quick question on my first question of the fact. It is 50 percent that the Federal Government provides to the State in this situation? I thought it was a different section. I don't know if the subsidy is the word. It's my understanding that the contributions are made about 50 percent by the Federal Government, 30 percent by the counties, and the State of California provides the other 20 percent. But the funding mechanism is, again, rather arcane, akin to the mosaics up here. But you're saying that it's not stated in the statute, it's stated in the regulations? In addition to the State's plan, the CFRs contain just page after page of rules and regs about how these programs are supposed to be run. Interestingly enough, even though being invited to do so nowhere, have appellants found a statute in there that says costs means actual costs or full costs? Again, it's something of a semantic issue, but there's nothing to support their position that cost means everything. And it doesn't matter if they're talking about the word cost or the word cover, which they go back and forth from as being the operative word here. So what is the Federal Government's 50 percent paid to? Does it slide with the State's payment? It, as I understand the State, I hate to use this word, but I will, fronts the money to the counties. The counties respond by making the payouts to the beneficiaries. They submit an invoice to the State. The State then reconciles that with what the Federal Government contributes back and then either makes up the difference. The State in effect submitted a bill to the Federal Government for 50 percent of what the State has determined it should pay? That is my understanding, Your Honor. Thank you. Thank you very much. Your Honors, if I may start with the issue of what the Secretary reviews. There's nothing in the record that indicates that what the Secretary does in his or her approval review process, I should say review rather than approval process, has any substance to it. And in fact, in the companion case or related case before Judge Alsop, he specifically found that there was no showing that this so-called review process involves any kind of discerning review other than to see if there is a plan. And so to the extent that the Secretary looks to see if the State has a plan in effect, it's not going to audit it. It's not going to look to see exactly what was paid. It's looking to see if there is a plan. But the statute requires that certain elements be included in a plan. So therefore, one of which is that there be covering of costs. I presume the Secretary has to make sure that those elements are there. Otherwise, the plan could never be approved, unless you're saying that the Secretary is presumed not to do anything. If you – if the Secretary looks at this plan, I would submit that it looks like a reasonable plan. What would stick out in my mind is the subject to availability of funds provision, but that hasn't yet presented a problem until this case came along. And that's why we're presenting this, because although they say – and I went back and checked Judge Reimer – I can see the implication that they're not asserting that that's an issue. But as Judge Alsop found, as we submit, their payment of some amount but not all amount is not compliant, because they can't pick and choose when they want to pay and how much they want to pay unless they are covering the cost. So, for example, it talks about covering the cost of food. Well, if a gallon of milk cost $1 in 1980, and it now costs $3, and there's not some kind of a mechanism that deals with covering that cost, they're in violation of this statute. And so our argument to this Court is the RCL could work, but it's got to comply with some mechanism, cost of living increase or otherwise, that covers the costs, and that's not being done in this case. So we're not arguing that there has to be a COLA. There could be another structure that covers the cost. But in this case, the State of California said we will have a C&I annual review, but it's just discretionary to us if we're going to cover the cost. Just like our checking situation, paying our taxes and our mortgages, we don't have that discretion, nor does the State of California. Okay. Thank you. Thank you, Your Honors. This matter just argued will be submitted. Submitted, Your Honor. Thank you.
judges: Wu, Goodwin, Rymer